UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

Ronald Michaud,                                   Case No. 8:13-bk-07220-KRM
                                                         Chapter 7

      Debtor.
_____/

Ronald Michaud,

      Plaintiff,

vs.                                              Adv. Pro. No.: 8:13-ap-603-KRM

Sallie Mae, Incorporated, and
Educational Credit Management
Corporation.

      Defendants.
_____/

**MEMORANDUM OPINION AND JUDGMENT**
**<u>DENYING DISCHARGE OF STUDENT LOAN DEBT</u>**

*Introduction*

Is repayment of at least part of $23,855 of student loan debt an "undue hardship" under 11 U.S.C. § 523(a)(8) for a well-educated, 66 year old person, with a history of heart issues who is living on social security and income from part-time employment? For the reasons stated below, the Court concludes, after applying the *Brunner* test,[1] that it would not be an undue hardship and thus the student loans are not dischargeable.

---

[1] *Brunner v. New York State Higher Educational Services Corp.*, 831 F.2d 395 (2nd Cir. 1987), adopted by the Eleventh Circuit in *Hemar Ins. Corp. of America, et al. v. Cox (In re Cox)*, 338 F.3d 1238, 1240 (11th Cir. 2003).

*Background Facts*

The Debtor, Ronald Michaud, is 66 years old with no dependents.[2] According to the stipulated facts, he owed $23,854.96 to Educational Credit Management Corporation ("ECMC") as of January 9, 2014, with interest accruing at a rate of $4.37 per diem.[3] The debt owed to ECMC stems from a Federal Family Educational Loan Program consolidation loan that was disbursed in November of 2001, to pay off four loans that financed his earlier education.

Initially, the Debtor pursued a theological education, earning an associate's degree in Philosophy from St. Mary's College (1969), a bachelor's degree in Theology from St. Mary's College (1973), and a master's degree in Theology from St. Mary's Ecumenical Institute (1978).[4] Thereafter, he served as an ordained minister for several years. In 1991, he changed course, earning a Master's degree in Mental Health and Human Resources from Western Maryland College,[5] and a Master's degree in Business Administration from Rivier College (1991).[6]

The Debtor worked as the Chief Financial Officer for Richardson Hollow Mental Health Facility until 2008, when he began suffering from continuous angina.[7] To date, the Debtor has had two pacemakers and two coronary stents installed.[8] He has also received daily antibiotic infusion treatments for extended periods of time, and has experienced numerous infections that

---

[2] Adv. Doc. No. 27, ¶ 3.

[3] *Id.* at ¶ 9.

[4] Def.'s Tr. Ex. No. 2, Pl.'s Resp. to Interrog. # 15.

[5] *Id.*

[6] *Id.*

[7] Adv. Doc. No. 1, ¶ 10.

[8] *Id.* at ¶ 12.

required surgery. The Debtor believes that there is a substantial likelihood that he will need additional surgeries in the future, including a pacemaker replacement.[9]

Due to his medical conditions, the Debtor began collecting private disability payments of $2,335.00 per month in 2008.[10] With the disability payments and social security, the Debtor's adjusted gross income for 2010-12 was $34,912, $35,715, and $42,029, respectively.[11]

The Debtor's disability payments expired in March, 2013.[12] Since then, he has worked part-time, making $9-10 per hour.[13] Although his part-time job does not fully replace the disability income that he was receiving, his anticipated income for 2013, including social security retirement distributions, was $21,540.[14] The Debtor testified that he had been seeking more hours at work, but had been unable to attain a full-time position as of the date of the trial due to his health.[15]

Despite his disability, the parties agree that the Debtor has timely made his monthly student loan payment of $223.00 during the majority of the repayment period, including those years in which he was receiving disability payments. In those periods when payments were not being made, the Debtor received a timely deferment from the lender.

---

[9] *Id.*

[10] *Id.* at ¶ 11.

[11] Def.'s Tr. Ex. No. 2, Pl.'s Resp. to Interrog. # 13. In these years, Mr. Michaud also received federal tax refunds in the following amounts: 2010: $4,432; 2011: $2,934; and 2012: $1,072.

[12] *Id.*, Pl.'s Resp. to Interrog. # 4.

[13] *Id.*

[14] *Id.*, Pl.'s Resp. to Interrog. # 23.

[15] Adv. Doc. No. 30, 20-21.

The parties agree that there are repayment options available to the Debtor, including income based repayment ("IBR") and income contingent repayment ("ICR"). The estimated monthly payment under these alternative plans would be approximately $50-80 a month, depending on the repayment plan.[16] That level of payments, however, would result in negative amortization of the loan, with the monthly interest accrual exceeding the monthly payment amount. Under current tax law, the Debtor would be liable for income taxes on any debt that is forgiven after 25 years in either repayment plan, unless he was insolvent at that time.[17]

The Debtor has not pursued these repayment options because he prefers not to undertake the "burden" of annually recertifying his income:[18]

> "I just feel that given my income and my expenses, even though they say I wouldn't have to pay anything, but that I may have future income or whatever, I just feel that I shouldn't have to be burdened by having to be hounded every year to justify my expenses and income so that I can justify that I have zero payment." (Tr. pp. 30-31).

In response to the concerns over future tax liability, ECMC argues that it may even be feasible for the Debtor to meet an extended repayment option of $183.16 a month for 20 years, which would avoid the issue of tax liability altogether. Alternatively, ECMC argues that the Court should afford little weight to the issue of potential tax liability either because it is unlikely that Mr. Michaud will be solvent in 25 years, or it is speculative to assume what the tax consequences might be at that time.

---

[16] *Id.* at 39; 51-57.

[17] Mr. Michaud's testimony in favor of receiving a discharge suggests that he believes that there is very little chance that he would be solvent at age 92, when the loans were discharged under either IBR or ICR. Adv. Doc. No. 30, 30-31.

[18] *Id.* at 30-31.

*Analysis*

Educational loans guaranteed by the government are presumptively excepted from discharge unless a debtor can show, by a preponderance of evidence, that excepting the debt from discharge "will impose an undue hardship on the debtor and the debtor's dependents."[19] The Bankruptcy Code does not define "undue hardship" or list any metrics by which such a finding is to be made.

The Eleventh Circuit and other courts have adopted the *Brunner* test, which requires bankruptcy courts to consider:

> (1) whether the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan;
>
> (2) whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan(s); and
>
> (3) whether the debtor has made a good faith effort to repay the loan(s).[20]

A determination of "undue hardship" is a fact specific, case-by-case standard.[21] If any one of the requirements of the *Brunner* test are not met, the student loan is not dischargeable.[22]

---

[19] 11 U.S.C. § 523(a)(8).

[20] *Hemar Ins. Corp. of America, et al. v. Cox (In re Cox)*, 338 F.3d 1238, 1240 (11th Cir. 2003). The *Brunner* test is also applied in the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits. *See Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 300 (3d Cir. 1995); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400 (4th Cir. 2005); *United States Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003); *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir. 1994); *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993); *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir. 1998); *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004).

[21] *See Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013).

[22] *See, e.g., Faish*, 72 F.3d at 306.

**1.    *Can the debtor maintain, based on current income and expenses, a "minimal" standard of living for himself if forced to make payments on the loan debt alleged by the defendant?***

There is no simple formula by which to assess a debtor's ability to maintain a "minimal" standard of living. The inquiry may require a detailed and complicated assessment of the debtor's income, expenses and lifestyle.[23]

Even though the Debtor's earnings in 2013 dipped to $21,540, from an average of $37,552 in 2010-2012, this is still almost twice the 2013 federal poverty level of $11,490 for a single individual with no dependents.[24] While bankruptcy courts do not require a debtor to live at or below the poverty level to receive a student loan discharge,[25] the Court has been unable to find a case where a debtor with Mr. Michaud's sustained level of income and payments has been granted a student loan discharge. It is clear that the Debtor would be able to maintain a minimal standard of living while participating in either the IBR or ICR plan. It may even be feasible for the Debtor to pay off his loan entirely under a 20-year extended repayment plan.[26]

Courts differ in the amount of weight that is placed on the availability and/or pursuit of IBR or ICR options when determining "undue hardship." Some courts refuse to grant a discharge where IBR or ICR options have not been pursued, while others view the debtor's inaction as only one of many factors to be considered.[27]

---

[23] *See Faish*, 72 F.3d at 306-07.

[24] 2013 U.S. Dep't of Health and Human Services Poverty Guidelines, *http://aspe.hhs.gov/poverty/13poverty.cfm.*

[25] *In re Mallinckrodt*, 274 B.R. 560, 566 (S.D. Fla. 2002); *see In re Matthews-Hamad*, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007).

[26] The extended repayment amount of $183.16 per month for 240 months may, in fact, be possible with the Debtor's current level of income by better controlling expenses.

[27] *Compare Wieckiewicz v. Educ. Credit Management Corp.*, 443 Fed. Appx. 449 (11th Cir. 2011) (bankruptcy judge did not abuse discretion by refusing to grant discharge because debtor refused to attempt income-based repayment option), *and Educ. Credit Management Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402 (4th Cir.

The Debtor has argued against the Court's consideration of the available IBR and ICR plans due to a probability of negative amortization occurring under those plans and the administrative burden that the Debtor might incur in having to annually recertify his eligibility. The Debtor has also noted the potential looming tax burden in the event the debt is discharged in 25 years and the Debtor is solvent.

This Court is sensitive to the arguments against IBR and ICR that have been raised by the Debtor.[28] But, Mr. Michaud's current monthly expenses include a $60 a month charitable contribution, and other items which could be reduced or eliminated in order to permit him to afford to participate in an IBR or ICR plan ($50 - $80 per month) or make amoritizing payments of $183 over 20 years[29] The record also reflects a history of tax refunds that, in every instance to date, would cover the amount owed under either an IBR or ICR plan.[30] Accordingly, the Court concludes that participation in such programs will not prevent the Debtor from maintaining a minimal standard of living.

---

2005) (debtor did not show requisite effort to repay her loans where she did not seriously consider an income-contingent repayment option), *with Lee v. Regions Bank Student Loans (In re Lee)*, 352 B.R. 91 (8th Cir. B.A.P. 2006) (failure of debtor to pursue income-contingent repayment is only one factor to be considered and is not *per se* bad faith); and *Williams v. Am. Educ. Serv. (In re Williams)*, 492 B.R. 79, 90 (Bankr. M.D. Ga. 2013) (same).

[28] *See Wolfe v. U.S. Dep't of Educ. (In re Wolfe)*, 501 B.R. 426, 435-36 (Bankr. M.D. Fla. 2013).

[29] Adv. Doc. No. 30, 47 (citing Def. Tr. Ex. # 5, Debtor's Schedule J). *See Bush v. U.S. Dep't of Educ. (In re Bush)*, 450 B.R. 235, 244 (Bankr. M.D. Ga. 2011) (charitable contributions should not be considered a permissible expense in contemplating debtor's future economic prospects).

[30] Def.'s Tr. Ex. No. 2, Pl.'s Resp. to Interrog. # 13.

### 2. *Do "additional circumstances" exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period?"*

The Debtor argues that the Court should consider his advanced age and medical history to conclude that his economic situation will never improve. The Debtor's current medical issues began about six years ago. Due to his receipt of private disability insurance payments, he did not seek employment until those payments expired in 2013. The Debtor then secured a part-time job. At the time of trial, he was actively seeking full-time employment.

Although the Debtor believes that his medical condition will worsen with age, there is no evidence in the record to support the claim that his physical condition will render him unable to augment or supplement his income in the near future. The Debtor's medical problems are not such as to support a finding that they will prevent him from repaying any of his student loan debt.

### 3. *Has the debtor made a good faith effort to repay the loans?*

From origination through the time this case was filed, there does not appear to have been any period where the loan at issue was in default status. As a result, there is no real contention that the Debtor has not acted in good faith, even though he has so far elected not to participate in an alternative payment program.

*Conclusion*

The Debtor has made most of the scheduled payments on his student loans. His income is nearly twice the poverty level and he has no dependents. He has medical issues, but they are presently remedied to the point of enabling him to work. There are various repayment options that would require only $50 to $80 per month that the Debtor could afford. His "preference" not

to have to deal with the income-reporting and other requirements of such programs is an insufficient reason to find "undue hardship" on the facts of this case.

Accordingly, it is hereby ORDERED that:

1) The relief sought in the Debtor's Complaint is hereby DENIED;

2) The student loan debt obligation owed to the Defendant is Non-dischargable;

**DONE** and **ORDERED** in Tampa, Florida, on July 9, 2014.

K. Rodney May
United States Bankruptcy Judge

The Clerk's office is directed to serve a copy of this order on counsel for the plaintiff and defendant.